DEVALL *vs.* CHOPPIN ET AL.

ON AN APPLICATION FOR A REHEARING.

The possession of a usurper enures to the benefit of the real owner ; and his bad faith cannot in any manner destroy or impair the right of the possession previously held in good faith.

But where the possession may have been obtained in bad faith, or the possessor may have been guilty of fraud, when he acquired his title, yet third persons not claiming under the same original title, or the party in whom it vested, cannot inquire into its defects or relative nullities. This can be done only by those who have suffered from his acts.

No relative nullities in titles or deeds, accompanied with possession, even those resulting from fraud, can be inquired into collaterally.

*R. N.* and *A. N. Ogden,* prayed for a rehearing in this case, on the part of the plaintiff.

1. The court intimates very distinctly, that if this case were to be decided on the relative strength of the titles, the plaintiff would succeed ; but it is decided against him, on the plea of prescription, *" the prescription of ten, and perhaps that of thirty years."* The points investigated by the court, in connection with the plea of prescription, were these two : 1st. The possession of Mathurin and others, from 1807 to 1814, caused an interruption. 2d. Baudin was a possessor in bad faith, and, therefore, not entitled to the prescription of ten years.

But there was another point urged by the plaintiff, and on which he strongly relied, to wit : that the defendants had failed to connect themselves with the title of Madame Bidou, or, in other words, that there was no proof that Baudin ever acquired the title of Madame Bidou, or succeeded to her rights. We understand it to be admitted that Baudin was in bad faith, and that no prescription could be invoked by him or by his *ayant cause,* except the prescription of thirty years, unless by uniting his possession with the previous possession of Madame Bidou. It is evident, then, that the success of the defendants must depend upon their proving a

connection between themselves and Madame Bidou. How is this shown. It must be recollected that the defendants hold the affirmative of that issue, and the burden of the proof lies on them, and they have not shown it.

[The counsel for the plaintiff then go into a minute detail of the facts of the purchases and acts of Baudin, and of Madame Bidou's title. They finally conclude a laborious investigation of this subject, by saying that the court fell into an error, caused by an erroneous view of the facts of the case, and that it will be at once conceded, that no ratification of Baudin's title and proceedings ever took place, and that he never acquired the rights of Madame Bidou; and that the defendants can derive no aid either from her title or her possession.]

2. The defendants then must commence their prescription with the possession of Baudin. But in the decision, the court appears to consider it necessary to their success, to be able to connect themselves with the possession of Madame Bidou, as it clearly is. Considering that connection as established, the court decides it sufficient that the possession commenced in good faith. But, under the view of the facts which we have presented, these circumstances become very material, and, therefore, we hope in the language of the decision, to be "maintained in our position;" that the bad faith of Baudin prevents his vendees from prescribing in less than thirty years. His bad faith is too apparent to require comment. The court appears to be convinced of it. If these views are correct, then the plaintiff is entitled to recover in this suit, and it will become entirely unnecessary to examine further into the titles of Madame Bidou. In the case of *Bedford* vs. *Urquhart et al.*, 8 *Louisiana Reports*, 246, this court says, "it cannot be necessary in every petitory action, that the plaintiff should show title in himself good against the whole world, and perfect, in order to recover against a naked possessor. He is bound to produce a title as owner, *causa idonea ad transferendum dominium*, to repel the presumption of

ownership resulting from mere possession, and the date of his title ought to be anterior to the possession of the defendant." The confirmation by the United States to Baudin enured to the benefit of the owner. It was only a relinquishment of the claims of the government, and Baudin remained after it, as he was before, a mere naked possessor. The defendants only have his rights.

We feel confident that the court will not refuse a rehearing on any views they may possibly entertain of the equity of the case, because that branch of the subject has not been investigated, in the arguments nor in the decision; and if the decision is to turn on that question, the plaintiff ought to be heard. We confidently affirm that the equity of the case is with the plaintiff. The evidence shows that the land has been abandoned for many years, and the plaintiff bought it for what was considered then a fair price for such land. The levee which has reclaimed it, *was made at the public expense.* The defendants bought it for a less price some time afterwards. The notoriety of the Conway titles · prevented Baudin, as is shown on one occasion, from making a bargain with a neighbor respecting this land. The defendants must have known they were buying a law-suit; if they did not, this suit has afforded the means of witholding the price or obtaining security. Justice certainly requires a re-examination of the case.

*Roselius,* on same side, contended, that the sale of the property, by the son of Mrs. Bidou, to Mathurin, and the possession of the latter for six years was an interruption of prescription. He possessed under a title translative of property, and acquired it from the person he believed to be the owner, and his possession must be an interruption of the possession of Herbert's heir. It can hardly be doubted but he *could have acquired* the land by prescription under his title.

2. We mainly rely on obtaining a rehearing, on the ground that the court erred in considering that the defendants hold under Herbert, through Madame Bidou. We

EASTERN DIST.
June, 1840.

DEVALL
vs.
CHOPPIN ET AL.

contend there is no proof whatever that her title was ever acquired by Baudin; and surely the appellees cannot be sustained in their plea of prescription, unless they establish affirmatively that her title and possession has been transferred to them. Baudin, as the pretended agent of Madame Bidou, attempted to sell a part of the land in 1814, to Guinault, who in 1820, retroceded it to him, (Baudin.) There is no power of attorney shown, or authority to make this sale. It was in fact a simulation and a sale to Baudin himself, and null. Madame Bidou was not divested of title to that portion of the land sold at sheriff's sale, and bought by Baudin. It was evidently an illegal proceeding from beginning to end. Besides, an agent can no more obtain a legal title by the purchase of the property of his constituent, than by a sale to himself. The difference is only in form. The only reliance on the validity of the sales to Baudin, is, that they were subsequently ratified by a proceeding instituted by him against Dubourg & Baron, the proper agents, and representing Madame Bidou's interest and rights. This could not be done, for there were minors, and their interests could not be alienated.

3. It is also said, that the objections against Baudin's title are only relative nullities, of which none but the heirs of Madame Bidou can avail themselves. This might perhaps be true, if it appeared that her title was better than the plaintiff's; but then there would be no necessity for the plea of prescription. As the defendants attempt to destroy our adverse possession, we are clearly entitled to show that they have not had their adverse possession. They have no right to invoke any possession but their own, since the sale of Baudin's succession, and no one will insist that the possession of Herbert, or Madame Bidou or her heirs, can enure to the benefit of the defendants, unless they can show that they have succeeded to their titles.

*Simon, J.*, delivered the opinion of the court.

Plaintiff's counsel, in their application for a rehearing, have called our attention to two errors of fact which they

ascribe to the confusion of the record, and which they consider very material : 1. That Dubourg & Baron were not the agents of Mrs. Bidou, but were the agents of the tutor of her minor heirs. 2. That Baudin did not recover a judgment for the balance by him claimed, after deducting the credit for the amount of the sales of the land made by him to Guinault, and by the sheriff to himself ; but only recovered the amount for which he had, in the opinion of the referees, proven his account ; and the counsel earnestly expresses the hope that the correction of these inaccuracies will have the effect of changing the ultimate result of this cause. He further maintains, that Baudin's title is stained with such nullities that he cannot be said to have ever acquired the rights of Mrs. Bidou, and that the defendants, unable to connect themselves with her possession, can derive no aid either from her title or her said possession.

A renewed and attentive perusal of the immense record from which we derived the statement of facts contained in our previous opinion, has shown us that we were laboring under a mistake when we called Dubourg & Baron the agents of Mrs. Bidou. She had been dead since 1815, and the suit instituted by Baudin, in 1819, was brought against them as the agents of the tutor of the deceased's minor heirs. We think, however, that this circumstance cannot benefit the plaintiff, nor can it in any manner change or modify the situation of the rights of the parties to this suit, as the sale from Baudin to Guinault took place in March, 1814, and the sale from the sheriff to Baudin was made in July following, about a year previous to the death of Mrs. Bidou.

With regard to the other alleged inaccuracy, it is proper that we should inform the counsel that we were aware that Baudin had not recovered the entire balance by him claimed, after deducting the credit, allowed in his account, for the amount of the sales of the land. We merely intimated, in our decision, that he had recovered judgment in a suit in which he had attempted to account for the price of the land by him received as agent, and had given credit for said price

in his account of expenses. It may, perhaps, not be immaterial to remark here, that the principal issues or averments contained in the answer of the agents of the tutor of the minor heirs, was, "that Baudin had promised, and *was bound,* to deliver back to them, in their *aforesaid capacity, the land lying in the parish of Pointe Coupée,* together with the rents and profits which he may have received, &c.; and that, in their said capacity, they were not bound to pay Baudin any sum of money whatsoever for his pretended expenses, until he returned them the land in question, *unless he gave a faithful and legal account thereof.*" On these issues, the case was decided. Baudin was not ordered to deliver back the Pointe Coupée land, as claimed by the defendants in their answer, but, on the contrary, recovered a judgment for two thousand and twenty-three dollars and thirty-seven and a half cents, found by the referees to have been the amount of expenses by him incurred for the benefit of Mrs. Bidou during his agency; and, as all matters relative to said agency were in controversy in said suit, we are unable to say that we came to a wrong conclusion in declaring, so far as the same can be inquired into collaterally in the present suit, that all those matters were ended by the said judgment.

It is, however, insisted that Baudin's title has no legal validity; that the minor heirs of Mrs. Bidou are not bound by the sales from which the property was transferred to Baudin, the unfaithful agent of their ancestor; that the judgment, above alluded to, is not binding on said minors; and that, therefore, Baudin, having no title, could not transfer any to the defendants, who, consequently, are unable to connect themselves with the possession of Mrs. Bidou. In other words, it is seriously contended by plaintiff's counsel, that because Mrs. Bidou, or her heirs, may perhaps show that they have never been legally divested of their title to the land in controversy, particularly on the grounds of want of authority, and of *bad faith and fraud* on the part of Baudin, their clients should be allowed to recover the land to the prejudice of both the defendants and the heirs of Mrs. Bidou.

EASTERN DIST.
*June,* 1840.

·DEVALL
*vs.*
CHOPPIN ET AL.

This appears to us to be a *non sequitur,* and we cannot for a moment entertain any such idea. Suppose the real right of ownership to be yet vested in the heirs of Mrs. Bidou, whose title has apparently been transferred to Baudin ; would this circumstance entitle the plaintiff to recover it ? Would it add any thing to the strength of his title ? Or, would it destroy, in his favor, the effect of the possession of Baudin and of the defendants ? Certainly not, as we have already decided. They would be considered as usurpers, (as we considered Mathurin,) and, as such, their possession would enure to the benefit of the real owner ; and, if so, the situation of the plaintiff would not be bettered. This is, however, the main ground upon which the rehearing has been applied for, and it is indeed a singular position. It must have required all the ingenuity of zealous and learned counsel, to give it the appearance of plausibility ; but the counsel has certainly misconceived the bearing of our decision, and the extent which we gave to it, or has made an incorrect application of the principles upon which it is based. The only question which the court considered themselves called upon to examine was, whether Baudin had a title translative of property upon its face, and was in possession under said title. If he had, the next inquiries were, whether there was good or bad faith in his possession, and whether his said possession was intermediate or original. His title was legally transferred to the defendants, who became entitled to the benefit not only of Baudin's possession, whose bad faith could not in any manner destroy or impair the effect of the possession previously held in good faith, *Louisiana Code, article* 3448 ; but also of Mrs. Bidou's, under whom he apparently held. Baudin's possession may have been stained with bad faith from its origin ; he may have been guilty of fraud when he acquired his title, but the plaintiff has certainly no right to inquire into such defects or nullities as are only relative to, and can only be taken advantage of by those who may have suffered from his acts. 2 *Louisiana Reports,* 70. There is no principle better established in our jurisprudence than this : that "no relative nullities in titles or deeds, accompanied

The possession of an usurper enures to the benefit of the owner ; and his bad faith cannot, in any manner, destroy or impair the right of the possession previously held in good faith.

But, where the possession may have been obtained in bad faith from, or the possessor may have been guilty of fraud when he acquired his title, yet third persons not claiming under the same original title, or the party in whom it vested, cannot inquire into its defects or relative nullities. This can be done only by those who have suffered from his acts. No relative nullities in titles or deeds, accompanied with possession, even those resulting from fraud, can be inquired into collaterally.

EASTERN DIST.
June, 1840.

with possession, even those resulting from fraud, can be inquired into collaterally," 13 *Louisiana Reports,* 395 ; and we doubt that it could be done, even if the plaintiff held his title under the same person. We have already intimated, and even said in our first opinion, that Baudin's title was translative of property on its face ; he was the agent of Mrs. Bidou, sold as such to Guinault, in March, 1814, acquired the balance of the land from the sheriff in July following, took up his residence on the land with his family in 1815, purchased the tract of Guinault in 1820, and obtained the confirmation of his title in his own name by act of congress of the 28th of February, 1823 ; the acts of sale are all regular, and in due form ; and in our opinion, the circumstance that his vendors may have to set up, against the validity of Baudin's title, certain nullities resulting from his fraudulent acts, which nullities are merely relative, cannot prevent it from having, as it now stands, its full and legal effect as *a just title* ; *Louisiana Code, articles* 3449, 3450, 3451, and 3452 ; and we do not think that the defendants, who have not been shown to have had any knowledge of the fraud attributed to Baudin, be prejudiced by it, at least so far as to avail the plaintiff.

The rehearing is, therefore, refused.